The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Judge Wallach, are we ready to proceed? We are. Okay, thank you. This is the time set for oral argument in 20-1284. Before the clock starts, Mr. Pinnell, I just want to let you know that I'll be listening for that tone, too, when you run up on 12 minutes. And I'll just alert you to that. Unless you're answering a specific question from one of the judges, that will eat into your rebuttal time. So just be aware that any time you run past 12 minutes that's not answering a specific question will eat up your rebuttal. Okay? Okay, thank you, Your Honor. I'll try to keep track of my time as well. I appreciate that. Okay. Fire away. All right. Well, thank you. May it please the court. Chad Pinnell, arguing on behalf of Appellant Roddapp. Roddapp submits that the analysis the appellee and the district court apply in this case embarks down a very slippery slope that this court has warned against in its 112 paragraph 6 jurisprudence. While the district court erred in several... This is Judge Wallach. I have a couple of questions for you. In the blue brief at 9, you say, and I'm quoting you, the PTAB denied institution finding, quote, the petitioner has not shown a reasonable likelihood that it will prevail with respect to unpatentability. But you didn't mention that this was because the PTAB found that each of the asserted claims means plus function limitation for which the specification fails to describe corresponding structure. Why didn't you mention the context instead of just saying the PTAB denied institution? Don't you consider that misleading? Well, I apologize, Your Honor, if you believe that it's misleading. You know, I think the point that... You do. Well, Your Honor, in the blue brief, I was sort of the new counsel that took over this case in the middle. I wasn't trying... I don't think that the original counsel that filed the blue brief was trying to be sneaky or trying to get by with anything. I think the point was that the only sort of legal basis for the PTAB was to deny institution. It wasn't to make decisions on matters of indefiniteness or structure. And I think that's sort of the problem that we've had with the citation to the PTAB. I don't think it's very... I don't think it is certainly not something that would dictate the outcome in this case. And it is certainly not something... And I think it was certainly something that we would disagree with as far as the way it went through the analysis. I think that kind of goes... In the blue brief at 38 and 39, you argue that the district court, I'm quoting you, overlooked significant algorithmic structure corresponding to the tracking function, citing the use of GPS-enabled computers and location technology. Where in the record did you argue before the board that the structure for this function included GPS computers for location technology? Well, for the tracking piece, I believe that the... When we talk about the GPS as far as the tracking piece goes, what we're talking about is that the information is... The GPS information is being sent to the central accessing system or the central data system in this case. That's the GPS information. I want to be a little clear here. While that particular structure, like the GPS structure, sends information to the central data system for the tracking function, it's the central data system that is doing the tracking. And part of the algorithm for that step is sort of receiving information such as loading or location information. I don't think that the argument was particularly that there had to be some sort of GPS in it. That's obviously some structure that's in the patent as a whole, but really the focus of the structure is the fact that the central data system is receiving information such as information from the GPS. Our main beef here is that there's sort of two fundamental ways that the district court has erred. Number one, it's required structure and algorithms that were to unclaimed functions. And then number two, it just keeps asking for more and more detail after sort of an algorithm or structure has been identified. And this is sort of exemplified in a couple ways. So for tracking, what you're asking for is the central data system has to track both the passenger and the vehicle from the initial request until arrival at the final destination. The operative function here is the tracking, and that's admittedly not a real complex algorithm. It's essentially it's going to be receiving data from things like the GPS, and then that information is... That sounds like a turning argument. Where does it say that? Where does it say that it's transmitting from a GPS? How it works. How the tracking works? Throughout the patent, I want to be very clear about something. Our argument is that the district court asked for a means for analyzing tracking data, and that's not tracking. The patent itself talks about a database. It talks about modems and cellular devices that transmit stuff from the passengers and the vehicles to the database. We cite fairly extensively in the passage before page 38 as to sort of the analysis and the structure for a database, and I think in figure nine you see the communication systems between sort of the transit loading database and the monitoring and all of the information that it is receiving. However, the actual tracking is a fairly simple algorithm. Now, I think it's essentially... Mr. Pinnell, this is Judge Chen. Does the specification, does the written description use the term tracking somewhere to help me understand what the patent drafter was contemplating when using the term tracking? I don't believe it uses the word tracking, Your Honor, but I think it's a fairly well-understood term in the sense of tracking is... Maybe that is so, but, you know, the way I hear you and read your briefs, it seems like you're equating tracking passenger transportation vehicle usage with something equivalent to collecting information, and I'm trying to figure out why is that necessarily right and whether tracking suggests something more than mere catching information and then putting it in storage. Well, I think the tracking analysis is certainly related to sort of the billing idea of tracking a user's, the location of the vehicles and the passengers and trying to collect that information for billing purposes and security purposes. I think that the tracking definition in the claims or the tracking idea in the claims comes from the idea of you're monitoring all of this communication. At the end of the day, this is a communication patent. You're monitoring all this communication and you're recording it. You know, I keep thinking back to sort of the idea of, I apologize, Butch Cassidy and the Sundance Kid where they're tracking somebody across the plains and they're monitoring for signs of somebody and they're sort of identifying and storing sort of what's the process that we are or where is the person going across this plain. That's sort of the common understanding of tracking. I don't think it's necessarily something drastically different, but it's applied here in the context of a computer and these central data systems and the passenger and vehicle systems by essentially gathering the messaging system or the messages together and storing them in a location. And I think there's so much stuff in here as far as tracking goes. You're tracking, the patent goes through, you're communicating the location. You're communicating when the person gets on and off the vehicle. You're tracking their personal information and routes and assignments and, of course, vehicle information. And I think the problem that we, you know, there's lots of cases or there's several cases in this course jurisprudence where, for example, Typhoon Touch, there was sort of the entry of a response and then a recording or entry of a response with an input and then there was a searching to determine whether a match exists and then execution. The same goes for some of the other cases that we cite. I believe the All Points case refers to, or I'm sorry, the All Voice case, talks about a system where you have determining positions of recognized words and there's only sort of one box and a figure and they say, well, this algorithm is essentially using a Microsoft, I think it was a Microsoft Word functionality. It gets sent to the interface. The function is being performed on the interface where it's recognizing the positions of the words. And this court said, well, in that case, you have something, information being sent to the interface. The interface is going to, but as long as the interface can come up with its own internal data structure to store those recognized words, that's sufficient. So it's simply receiving something and storing it. I don't think that's the wrong algorithm. This is Judge Chen again. You've got a lot of different means plus function limitations you have to win on here, and I just want to give you a quick chance on the on-demand allocation functional language. And just assume for purposes of this question that the court disagrees with you on whether allocation includes assignment and that the claim limitation does in fact require the computer system to make the match and to assign a particular vehicle to a particular customer requesting a ride. Where in the specification, what's your best citation for what the corresponding structure is, what the so-called algorithm series of instructions for performing this assignment matching function by the computer system? Well, Your Honor, I think the best link here is at column 15, line 25, which falls in the middle of the discussion between figure 5 and 6. It talks about doing the allocation function or passing along the allocation. And then also between columns 7 and 8, there's sort of a description of the invention, and it talks about communications to vehicles to allocate. I want to be clear on the allocation and assignment piece. We have never argued that assignment is not related to allocation. And the district court in this case said that we had argued on-demand allocation includes assignment. And we did say that in the portion that the court is citing there. It says it kind of removes the ellipses where we said, well, yeah, but allocation is something more. I don't think we might mind if you say allocation is assignment and assignment is allocation. The point is that allocation is something to the vehicle. Now, the best thing I can point you to is figure 5 and 6. And I know I'm kind of running out of time here, but between 5 and 6, number 5 is sort of the on-demand allocation piece. The on-demand comes with receiving the trip request. And then 504 of figure 5 is the process trip request. That's the assignment, which you see is further detailed in figure 6. Thank you. I'll just finish up really quick. And then the allocation piece that we point to is sort of the bottom half of figure 5 after it comes back from the passenger assignment. So assignment is something that's going on with the passenger in figure 6. Allocation is something that's going on to the vehicle, and specifically on-demand allocation in figure 5 starts with receiving the trip request. It ends with sending that assignment information to the vehicle, and that's the critical part of allocation. Thank you, Your Honor. I'll reserve the rest of my time. Okay. Mr. Taylor? May it please the Court? Oh, I'm sorry. Go ahead. May it please the Court? Your Honors, thank you for the time. I appreciate being here today, even if it's remote. I wanted to pick up on something Counsel for RIDAP was just discussing on allocation. And then I want to turn to the claim elements that, frankly, if Your Honors agree are indefinite, it moves the rest of the indefinite arguments because they cross all claims here. But touching on the allocation point briefly, I believe Judge Chen you asked Counsel for RIDAP what the best site was for passengers. And he pointed us to a place on column 15, line 25. And it simply says, based on passengers' parameters. And I think that's endemic of the flaw here in RIDAP's arguments. Across claims, there's really no algorithm that explains how you take these inputs, in this case, passenger parameters. It may be location data from GPS information. It may be communication data. There's lots of inputs provided in this patent. There's no algorithm that explains how you take those, how you weight those, and perform the claims function. And that's with respect to the allocation element, but I think it applies to the others as well. Turning back to the tracking function, which we spent a little bit of time on earlier, as was noted initially, both the District Court and the Patent Office twice found these claim elements indefinite. And while the Patent Office is holding this in finding, they did an extensive finding of facts that the District Court found informative. There was a question asked. Mr. Taylor, just so I understand what happened at the PTAB, you filed two petitions, or there were two petitions filed challenging these very claims. Is that right? That's correct. In those petitions, you know, you're obligated to identify what you believe is the corresponding structure for these different means plus function limitations. What did you articulate as the proposed corresponding structures in those petitions? We filed, just to make sure everyone's clear on what happened at the PTAB, Lift, Appellee Lift filed one of the ITR petitions and a third party unified patent filed another one. All right. What did you and unified propose as the corresponding structures for these different means plus function limitations? With respect to the petition on this patent, we specifically noted that we were not sure there was corresponding structure. But what we did identify for each claim limitation was the best, if there was structure, our best approximation. And what we thought in almost, I think it's pretty much every instance that the structure, if any, exists would be disclosed in figure nine or table one. In some instances you heard counsel for write-ups say there's some potential structure in figure six, five, and six. And what we said to the patent office, if you find this to be sufficient structure, here's where you'd find it in the prior art book, but we reserve the right to argue that it's indefinite because we do think it is. And to give you an example, if you want to look at the tracking function, if you look at figure nine, towards the top of that figure, there's a box that says monitor status for vehicle assignments. And you can see a corresponding entry in table one. And the problem with that structure really is, and this is with respect to the tracking usage function, it really just repeats the claim limitation in a way that... Did the board say that in its non-institution decision? They did find that this claim, as well as the other claims... They found that tracking was indefinite, that there was no corresponding structure for the tracking function? They did. I thought their non-institutions were directed more towards on-demand allocation and proximity of the passenger and vehicle? Your Honor, I don't have the opinion in front of me. It's possible you're correct. I thought they did find the tracking function, but I do specifically recall a lot of discussion about the allocation function. So you're correct about the allocation function. I thought it was also with the tracking function, but I may be wrong, and I don't have the opinion in front of me. So I apologize about that. But our position, back to your question, was that on the tracking function, if there is structure, it would be found in figure nine, it would be this monitor status for vehicle assignments. And frankly, the parties don't really dispute that point. The problem with that description and that structure is it just replaces the word tracking with monitor. And it really doesn't explain how you do that. What is wrong with understanding tracking customer vehicle usage with simply storing those signals indicating what the customer is doing with a particular vehicle? Your Honor, there's nothing wrong with that. If that was disclosed in the patent, it certainly discloses collecting the information, but how you use that information, how you use the GPS information, the communication information, when it's transmitted, and how you take all that information to determine usage is not disclosed anywhere in the patent. But I guess the question is, okay, for this system, there's going to be a profile for each customer. And so when a given customer is getting in a car, is in a car, gets out of a car, the system bills the customer, all of that just gets stored in a particular place in the database that corresponds to that particular customer. I mean, that's it. And what is so complicated about that and what more needs to be said other than that is what I'm trying to understand. Sure. There's nothing particularly complicated to answer your question. The problem is it's not disclosed. So there's lots of ways to take that data and convert it into usage data, which is what the claimed function says, tracking passenger transportation vehicle usage, not just tracking the passengers. If it was just tracking the passengers, I think taking their location and recording them probably would be enough. But we're talking about tracking usage. And so taking where they are, where they may have gotten into a car or a bus, what route they took, how many miles they went, all of that is relevant to determine usage. And none of that is provided in the patent. Something else that's particularly complicated in this instance is GPS, when at the time this patent was filed, was imprecise. The parties don't dispute that. There was something called selective availability that deliberately reduced GPS accuracy for non-military uses to a couple hundred meter range, which means you couldn't just take a precise location and then convert that into usage the way you might be able to do today. And that's in the record. The parties don't dispute it. If you want to see that precisely, you can look at appendix page 677. That's RIDAC-submitted complaint where they talk about this. So it's not as simple as recording the location. Not only could you not get a precise location and store it when this patent was filed, even if you did have a precise location stored in the central data system, also referred to as the central assigning system in the patent, you then needed to convert that and use some algorithm to convert that into usage, and nothing explains that in the patent. Is it per ride? Is it per mile? Do you look at the start and stop locations? All of that information would be particularly relevant if you want to tell someone of skill in the art what is the balance of this claim, which is at the heart of the issue here, Your Honor. The other issue I wanted to touch on briefly, so we've talked a lot about the tracking function. And that claim element, if Your Honors find it indefinite, again, crosses all claims, it would dispose of this matter. You wouldn't have to reach any other claim terms. But that's true also of the distributing periodic invoices claim limitation. And it has the same problems. We haven't talked about that one yet. Let me briefly touch on it. Like the tracking limitation, the parties generally agree that the best disclosure, if there is any structure in the patent, would be in Figure 9 in Table 1. It's at the bottom of the Figure 9 this time. It's a box called billing and payment. And obviously that box alone isn't enough to disclose how you would distribute periodic invoices for the usage. If you go to Table 1, there's a little bit more description. And it talks about using the stored data in the system to periodically, e.g., monthly bill the passengers and pay all drivers. But, again, it doesn't explain how you do that distributing that's in the claim limitation. In this case, there's a little bit more even beyond those two. And certainly we want to look at the whole patent when we're trying to decide if there's corresponding structure. So if you look at Figure 8, and, again, the parties don't really dispute this part. If it's sufficient, it would be corresponding structure. Item 8.14, towards the bottom of Figure 8, says aggregate billing data and transmit to user. So we add a little bit of detail there with aggregation. But, again, nothing about distributing. And that goes to the heart of the problem with this claim limitation. There is no detail how you distribute the step-by-step algorithm that the central data system would use to distribute the periodic invoices. Do you use mail? Do you use an app on a mobile phone? How often do you send this? And it's interesting. We talked about periodically. I read from Table 1 that mentioned periodically as monthly. That's contrary to what RIDAP has ever argued. So there's been no position that periodically means monthly brought up in the lower court. In fact, RIDAP had previously argued that periodic means occurring at regular or inter-regular intervals, really any time, trying to read out that claim limitation entirely. And you can see this, actually, in the appeals briefing. If you look at RIDAP's reply at page 13, their proposed structure for this limitation would be aggregating collected data and transmitting it. That proposed structure actually provides less detail than the claim function itself. It reads out periodic. It does add the word aggregating, which we saw in Figure 8, which we wouldn't dispute. But it really doesn't explain how you would distribute these invoices in a way as the case law requires. Your Honors, I was planning to address those two terms, because if you decide either is indefinite, they cross all claims, and you need not reach the rest. But obviously, if there's any other questions, I'm happy to address them. Otherwise, I'll cede my time. Okay. Thanks, Mr. Taylor. Mr. Pinnell, you have some time left. Yes. Thank you, Your Honor. I just want to point out a lot of this argument from my opposing counsel deals with the enablement issue. They keep asking the question, how, how, how? And that's exactly what this Court has warned against in the Typhoon Touch case and others where it says that the 112 Paragraph 6 analysis should not raise the specter of an unending disclosure. For example, we do disclose how things are transmitted through utility bills and other things. One thing I do want to point out, Your Honor, is, you know, I heard my opposing counsel, Mr. Taylor, talk about there's no description of how things are transmitted or in the tracking function or how frequently it is transmitted. And that's something that the District Court picked up on and kept asking, well, how is this done? Well, first of all, this isn't a case about, this isn't a means plus function, a means for transmitting tracking information or a means for the frequency of which that transmission occurs. And I want to point out some of the problem here is that at page 45 of the red brief, the defendants attack us and say, well, you point to things like digital cellular communications or GPS as the way things are transmitted. But then they say, but that's not part of tracking. So which is it? He's sitting here today saying, well, this has to track, or this has to tell you how it's transmitted. But then in their brief they say, well, this isn't tracking. And the frequency with which the CAS receives inputs, well, that isn't part of the tracking algorithm either. The point here is I read the court's case law is that first you want to look for the structure based on what the actual function is. Here the function is tracking. It's not analysis of tracking data. It's not a means for transmitting tracking data. It's a means for tracking. And this is not a situation. Wrap it up. It's not a situation. Well, Your Honor, I think you have it well in hand. On behalf of RIDAP, I appreciate your time here today and ask that you reverse the decision on indefiniteness. Thank you. Thank you, counsel. We'll conclude the first case. We'll stand submitted.